## In the District Court of the United States
## For The District of South Carolina

**BEAUFORT DIVISION**

| | | |
|---|---|---|
| Patrick Clifton Clark, #13393, | ) | Civil Action No.  9:07-0791-GRA-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Sumter County C/O William Noonan; | ) | |
| Lee County C/O Jimmy Lacoste; | ) | |
| Sgt. Dwyer; Sgt. Richardson; Asst. | ) | |
| Director Major McGainey; | ) | |
| Sergeant Brunson; Officer Jenkins; | ) | |
| Southern Health Partners; | ) | |
| and Dr. Bush, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  INTRODUCTION

The Plaintiff, Patrick Clifton Clark ("Plaintiff" or "Clark"), is a pre-trial detainee who was incarcerated at the Sumter-Lee Regional Detention Center ("SLRDC") at the time of the alleged incidents giving rise to this action.  Proceeding *pro se*, he seeks relief from the above-captioned Defendants, Sumter County C/O William Noonan; Lee County C/O Jimmy Lacoste; Sgt. Dwyer; Sgt. Richardson; Asst. Director Major McGhaney;[1] Sergeant Brunson; Officer Jenkins; Southern Health Partners;[2] and Dr. Bush, alleging that the Defendants were deliberately

---

[1]     McGhaney's name was mis-spelled as McGainey in the caption.  The court will use the correct spelling of the defendant's name herein.

[2]     The Plaintiff initially had named the "SLRDC Medical Staff" as a Defendant.  On May 11, 2007, the Plaintiff filed a motion to amend/correct the complaint [20] to change that defendant's name to "Southern Health Partners".  The undersigned granted the Plaintiff's motion by an Order dated May 17, 2007. [22] Southern Health Partners, Inc. is a corporation that provides medical staffing to detention centers such as SLRDC.  Dr. Bush is a contract employee of Southern Health Partners. *See* Memorandum in support of motion for summary judgment filed by Southern Health Partners and Dr. Bush [51] at p. 1., n.1.

indifferent to his serious medical needs, in violation of 42 U.S.C. § 1983.[3]  Plaintiff seeks monetary damages.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.SC. § 1983, and submit findings and recommendations to the District Court.

## II.  THE *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v.*

---

[3]      42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  FACTUAL BACKGROUND

The Plaintiff has been incarcerated in the SLRDC, awaiting disposition of a murder charge, since November 20, 2006. Upon his arrival at the SLRDC, the Plaintiff informed SLRDC personnel of his numerous health problems:  he is a dialysis patient, with hypertension, an enlarged heart, congestive heart failure, anemia, and asthma. On the day he arrived, he stated he was supposed to have dialysis treatment, and was short of breath, and needed a special (renal) diet due to his kidney condition. The Plaintiff was placed in a cell with a window for

observation.  The Plaintiff asked to go to the hospital, but his request was refused.[4]  Since that

day, the Plaintiff contends that his "civil rights were greatly violated."  He has set forth in his

complaint the dates he was denied a snack, despite doctor's orders for one; he was served food

inconsistent with a renal diet; he was denied his Tylenol #3 for pain in left arm; he was denied

lunch after dialysis; he was denied breakfast and medication; he was served the same food three

times a day for ten (10) days; he was denied medication after his noon meal, which he states

must be taken within thirty minutes of each meal for it to be effective; he was denied medication

on two successive days and told that medical had forgotten to order it and was offered something

else; he again was served the same food three times a day for fourteen (14) days; he failed to get

a response from medical after he informed medical that his rejected kidney was causing him a

great deal of pain and that his kidney specialist said it had to come out; he was served the

"wrong food"; he sustained a "serious back injury" while being transported in a van to Columbia

for dialysis and despite numerous requests to medical (including a request dated March 14,

2007), was only given Tylenol for three days, and remains in pain.[5]  The Plaintiff contends he is

endangered every time he is transported to dialysis in the van because he is in restraints and must

sit on a steel bench without a seat belt; he slides up to the front of the van when the driver

brakes, and "when [the driver] does a jack rabbit start I get thrown to the back" of the van.[6]

Furthermore, the Plaintiff alleges he was denied a prescription from his kidney specialist during

---

[4]     Complaint [1] at p. 3.  The Plaintiff does not state the reason he wanted to go to the hospital.

[5]     Complaint [1] at pp. 3-4.

[6]     Complaint [1] at p. 4.

January 2007.[7]  The Plaintiff alleges:  "My civil rights have been greatly violated and I want the court to reward me very highly for the neglect pain and suffering and endangerment that the staff at [SLRDC] has put me through."[8]

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

The Plaintiff commenced this action on March 20, 2007.[9]  [1]  After the case was brought into proper form, an Order was issued on April 11, 2007 instructing the Clerk of Court to issue the summons and copies of the complaint to the Defendants for service of process by the United States Marshals.  [7]  Thereafter, with leave of the court, the Plaintiff filed an amended complaint on June 6, 2007 which named additional defendants and set forth additional claims against the Defendants; the Plaintiff claimed that Dr. Bush had refused him medical treatment on May 11, 2007 "for swollen feet because he didn't like something I said" and that Defendants Brunson and Jenkins wrongfully wrote him up and moved him to disciplinary lock-up after the Plaintiff could not "stand on the red line".  [37]

Answers to the Amended Complaint were filed on behalf of the Defendants Lee County [38], Southern Health Partners and Dr. Bush [39; 40], and Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins.  [41]

On June 13, 2007, the Plaintiff filed his motion for sanctions against all defendants, contending that the Defendants had maliciously withheld documents requested during discovery,

---

[7]     *Id.*

[8]     Complaint [1] at p. 5.

[9]     Should a limitations issue arise in this action, Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his complaint.  *See* this court's Order [5] filed on March 28, 2007.

and specifically that several pages were missing from the Plaintiff's medical file, which had been requested by the Plaintiff. [46] The Defendants Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins responded, contending that the Defendant Southern Health Partners had responded to the discovery request with the appropriate documents. [48] The Defendants Southern Health Partners and Dr. Bush responded to the Plaintiff's motion for sanctions by providing an affidavit from the administrative assistant of the SLRDC's medical department which stated that a search of the SLRDC's medical department records revealed that the missing pages sought by the Plaintiff were not in the original medical file "and were never a part of what was received . . . from Tuomey Hospital and LabCorp."[10]

On June 18, 2007, the Defendants Southern Health Partners and Dr. Bush filed their motion for summary judgment, with a supporting memorandum and exhibits. [51] Accordingly, an Order was issued on June 19, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying the Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion for summary judgment within thirty-four (34) days. [52]

On June 26, 2007, the Plaintiff filed a motion to compel the production of medical records from certain medical providers who apparently had treated him during his detention in SLRDC. [56] Also on that date, the Plaintiff filed a motion for protection "from this malicious punishment;" the Plaintiff alleged that staff members at SLRDC were confiscating his incoming and outgoing mail, charging him for photocopies of legal materials, and denying him medically-approved canteen items. The Plaintiff requested that the court enter a protective order on his

---

[10]        *See* Supplemental Response [55] at p. 2.

behalf to protect him from these punishments inflicted by SLRDC staff members.  [57]  Two days later, on June 28, 2007, the Plaintiff filed a motion to seek sanctions against the Defendants as a result of the Defendants' incomplete responses to Plaintiff's requests for his medical records, and for tampering with the Plaintiff's mail; the Plaintiff also sought to file criminal charges against Defendant McGhaney "for intentional discrimination with malice."  [59]

On July 2, 2007, Lee County responded to the Plaintiff's motion for sanctions, stating that it had not received any discovery requests from the Plaintiff and therefore any of the Plaintiff's proposed sanctions were not applicable to it.  [62]  On July 5, 2007, Southern Health Partners and Dr. Bush responded in opposition to Plaintiff's second motion for sanctions (dated June 28, 2007 [59]), stating they had no knowledge of the alleged "tampering with mail" and denying same; and providing copies of additional medical records which had not been attached to their motion for summary judgment, and which were all of the remaining records contained in the Plaintiff's medical chart.  [65]  Those Defendants also responded to the Plaintiff's motion to compel the production of all health records [56] by referring the Plaintiff to their previous response.  [66; 65]

On July 16, 2007, the Defendants Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins responded to the Plaintiff's motion to compel the production of all health records [56], the motion for protection from "malicious punishment" [57] and the motion for sanctions [59] by stating, with respect to [56], that they had provided all documents requested by the Plaintiff; by submitting an affidavit by Defendant McGhaney which addressed the allegations contained in his next motion [57], and finally, with respect to the request for sanctions for improper responses to discovery requests [59] that those Defendants did not have the medical records which the Plaintiff sought.  Also on July 16, 2007, the Defendant Lee County responded to the Plaintiff's motion to compel the production of all health records [56], the motion for

protection from "malicious punishment" [57] and the motion for sanctions [59] by stating, with respect to [56], that Lee County received no discovery requests from the Plaintiff; with respect to [57] that Lee County did not have any involvement, oversight or connection with the operation of the SLRDC and that the Plaintiff's motion was inapplicable to it; and finally, with respect to the second motion for sanctions and criminal charge against the Defendants [59], Lee County reiterated that it had not been served with discovery requests, and even if it had, Lee County would have no ability to produce the medical records requested.  [74]

On July 17, 2007, Lee County filed a motion for summary judgment, with a supporting memorandum and the affidavit of James LaCoste, the Administrator for Lee County.  [75]  ON July 18, 2007, the Defendants Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins filed a motion for summary judgment, with a supporting memorandum and numerous affidavits, including an affidavit by McGhaney.  [76; 78]  Another *Roseboro* Order was issued to the Plaintiff, which apprised him of the deadline for responding to those two motions for summary judgment.  [77]

Thereafter, on August 3, 2007, the undersigned granted the Plaintiff an extension of time (until August 22, 2007) to respond to the three motions for summary judgment.  [84]

During the time this deadline was pending, the Plaintiff filed three additional motions. First, the Plaintiff filed a motion to subpoena all camera images for certain events within the SLRDC, as more fully itemized in the motion.  [88]  Although the Plaintiff stated that the information was "necessary to provide [his] case[,]" no further explanation of the motion was supplied to the court.  Second, the Plaintiff filed a motion to subpoena a copy of "all credentials that qualified Sammy Rembert as kitchen supervisor, head cook, dietician, or nutritionist.  [89] Lastly, the Plaintiff filed a motion to subpoena a copy of the contract between Sumter County and Lee County for the purpose of "proving Lee County's involvement" in the SLRDC.  [90]

On August 23, 2007, the Plaintiff filed his Response [91] in opposition to the Defendants' motions for summary judgment, and supplemented his response with filings made on September 7 and 14, 2007. [97, 100]

The Defendants Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins objected to the Plaintiff's motion for Sammy Rembert's credentials, contending that the Plaintiff actually was trying to serve un untimely discovery request upon those Defendants. [92] Furthermore, those Defendants referred the Plaintiff to Mr. Rembert's affidavit, which set forth his 22 years of experience in SLRDC's kitchen, and which qualified him for the position of kitchen supervisor. [92]  Lee County also responded to the Plaintiff's motion for Sammy Rembert's credentials, stating that it had no knowledge of those credentials because it had no operational involvement or oversight in the SLRDC. [93]

The Defendants Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins also objected to the Plaintiff's motions to subpoena the security camera images, and motion to subpoena a copy of the contract between the two counties, again arguing that the Plaintiff's motions were merely untimely requests for discovery. [94]  Lee County likewise responded to the Plaintiff's motions by claiming that they were untimely requests for discovery. [95]

On September 7, 2007, the Plaintiff filed another motion for sanctions against the Defendants for intentionally withholding the Plaintiff's outgoing mail until after a court deadline on August 16, 2007. [98]

As the issues have been joined, this case is ripe for review by the undersigned.

## V.  DISCUSSION

### A.  Summary Judgment Standard

The determination of Defendants' Motions for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Id. at 323; Fed. R. Civ. P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence.  *Ross*, 759 F.3d at 364.  Put another way, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*,  855 F. 2d 167 (4th Cir. 1988).

Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a Section 1983 action. 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

The Plaintiff claimed that he filed a total of fourteen (14) grievances regarding these matters, and nine of the grievances were answered.[11]

The court notes that the Defendants Lee County, and Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins specifically pled as an affirmative defense that the Plaintiff's action was barred by the PLRA. However, Southern Health Partners and Dr. Bush failed to raise this affirmative defense in their answer. In *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 678 (4th Cir. 2005), the Fourth Circuit held that "[u]nder Federal Rule of Civil Procedure 8(c), a failure to plead an affirmative defense results in a waiver of that defense[.]" (Internal quotation and citation omitted). A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove. *Jones v. Bock*, ---U.S. ----, 127 S.Ct. 910, 921,

---

[11]     Complaint [1] at p. 2.

166 L.Ed.2d 798 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).

The court finds that some of the claims in the Plaintiff's complaint have been exhausted, and others have not. The issue of exhaustion will be discussed in greater detail below.

### C. The Merits of the Plaintiff's Case

### 1. Introduction

As a *pro se* litigant, the Plaintiff's Complaint must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that the Defendants be granted summary judgment.

### 2. Plaintiff's Action Pursuant to Section 1983

The United States Supreme Court has held: "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).

Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted). Mere negligence or malpractice does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851. Furthermore, the type and amount of medical care an inmate receives is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988). It follows, then, that disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Finally, in the context of alleged indifference to serious medical needs, in order to state a Section 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

### 3.  Deliberate Indifference--Medical Personnel

Whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the plaintiff must allege a deprivation of medical care that was sufficiently serious (the objective component) and second, allege that there existed a "sufficiently culpable state of mind" by the defendant (the subjective component).  *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The first issue (the objective element) is whether the plaintiff has pled the deprivation of a serious medical need.  That element can be further broken down into two components:  (1) a serious medical need and (2) mistreatment or nontreatment of that need.

There is no clear definition of what constitutes a serious medical need.  However, the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems.  *Smith v. Preston*, 2007 WL 626191 at *3 (D.S.C. Feb. 23, 2007) (*citing Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'"  *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  The objective element also requires the plaintiff to prove that his serious medical need was not timely or properly treated.  *Smith v. Preston*, 2007 WL 626191 at *3.  Although expert exploration may be required to aid the jury in determining the threshold standard of medical care, a jury may find, without further expert testimony, that certain actions fell so far below enunciated standard that they constituted gross indifference actionable under Section 1983.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990).  Thus, summary judgment may not properly be based on an absence of a statement from an expert that

the care given was grossly negligent when inferences drawn from the record could support such a finding. *Id*.

The second element (the subjective component) requires a showing that the defendant's actions were wanton. The standard for wantonness depends upon the circumstance of the case. *Smith v. Preston*, 2007 WL 626191 at *3 (*citing Wilson*, 501 U.S. at 302-03). To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm. *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. *See, id*. at 852-53 (deliberate indifference to cardiac condition); *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989) (denial of requests for medication); *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987) (obvious risk created by gunshot wound); *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir.1986) (condition escalated into obvious risk); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir.1978) (delay in treating an obviously broken arm). Whether a prison official had the requisite knowledge is a question of fact subject to demonstration by inference from circumstantial evidence, and a fact finder may conclude that prison official knew of substantial risk from the very fact that a risk was obvious. *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). A plaintiff must prove that the defendant was aware of facts showing a substantial risk of harm and also drew the inference that a substantial risk of harm existed. *See, Johnson v. Quinones*, 145 F.3d 164, 167-68 (4th Cir. 1998) (although doctors knew of symptoms, there was no evidence that doctors knew of the medical condition underlying the symptoms).

### Claims against Southern Health Partners and Dr. Bush

Plaintiff claims that he was denied medication from medical personnel[12] and that medical failed to respond when Plaintiff informed them that he needed to have surgery to have his kidney removed.[13]  Furthermore, in the amended complaint, the Plaintiff claimed that Dr. Bush had refused him medical treatment on May 11, 2007 "for swollen feet because he didn't like something I said."  Assuming, *arguendo*, that the Plaintiff's conditions are considered serious or life threatening conditions, there is no evidence that Southern Health Partners or Dr. Bush was deliberately and intentionally indifferent to the Plaintiff's medical needs.[14]  First, the Plaintiff has failed to set forth any evidence that he was denied medical treatment by Dr. Bush.  Indeed, Dr. Bush's affidavit states that he saw the Plaintiff and treated him for various ailments, and he attended the Plaintiff for chronic kidney failure by providing dialysis in Columbia, South Carolina at Tuomey Hospital.[15]  Southern Health Partners records indicate that after the Plaintiff complained of back pain, he was prescribed, and received ibuprofen for three days beginning on February 27, 2007 and ending on March 2, 2007[16], and again received ibuprofen on March 28, 2007.[17]  The Plaintiff acknowledges in his Complaint that he was prescribed medication for pain.

---

[12]     Complaint [1] at p. 3.

[13]     Complaint [1] at p .4.  The Plaintiff alleged in his complaint that he told medical in January 2007 "about rejected kidney that's causing a great deal of pain.  Kidney specialist says it has to come out and SLRDC is responsible for it, so far [as of March 17, 2007], they have shown no response."  The Plaintiff has not identified his kidney specialist.

[14]     Although the Plaintiff states in his complaint that in February 2007, he injured his back when riding in the van to dialysis, the court's review of the Plaintiff's grievances indicates that he never filed a grievance about this issue.  *See* Grievances (various) attached at [73-4].

[15]     *See* Bush Affidavit [51-6] at ¶¶ 3-4.

[16]     See [65-5] at pp. 1-2.  Although Plaintiff alleges that he suffered a back injury while traveling in the van to dialysis, all of the x-rays (two frontal and two lateral x-rays of his lumbar spine) were unremarkable, and thus his alleged back injury does not rise to the level of a significant physical injury.  *See* Radiology report [51-5 at pp. 7-8] attached to Memorandum filed by Southern Health Partners and Dr. Bush.  [51]

[17]     *See* [65-4] at p. 4.

Likewise, although the Plaintiff complained that he was denied medication on March 3, and 4, 2007, the grievance form and the SLRDC's response indicates that the Plaintiff ran out of medication (not that it was not ordered), a member of medical picked up the medication on Saturday at a drug store, and the same type of medication (but with a different name) was presented to the Plaintiff, who refused to take it.[18]  Finally, with respect to the Plaintiff's claim that Dr. Bush refused him medical treatment on May 11, 2007 "for swollen feet because he didn't like something I said," this court has reviewed the Plaintiff's Inmate Sick Call Slip–Medical Requests and the Plaintiff's grievances, and found that on May 10, 2007, the Plaintiff complained of swelling in his legs and feet, and on May 11, Dr. Bush discussed this issue "at length" with the Plaintiff, and the Plaintiff again was offered ibuprofen (Motrin) as needed for pain.[19]

The gravamen of Plaintiff's complaint appears to be that the treatment was insufficient. The records reflect that Plaintiff saw Dr. Bush on several occasions; he also was put on a meal plan for renal insufficiency, and prescribed medications.  Although Plaintiff may disagree with Dr. Bush's treatment of him, Dr. Bush's actions simply do not state a claim for deliberate indifference.  *See, e.g., Estelle*, 429 U.S. at 293   Although the Plaintiff may be dissatisfied with the medical care he received, his dissatisfaction is insufficient to state a claim under Section 1983.  The Plaintiff has shown nothing more than a disagreement with the medical treatment provided, **not** that he was denied medical treatment.  At most, the Plaintiff's complaint sounds in medical negligence, which is not actionable under 42 U.S.C. § 1983.  *Miltier*, 896 F.2d at 851 (for plaintiff to succeed on medical indifference claim, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to

---

[18]     *See* Grievance dated March 4, 2007 [73-4] at p. 13.

[19]     *See* Inmate Sick Call Slip–Medical Request, attached at [51-7] at p. 9.

fundamental fairness . . . mere negligence or malpractice does not violate the Eighth Amendment."). Accordingly, even assuming, *arguendo*, that the Plaintiff has set forth allegations of serious or life threatening conditions, the Plaintiff has failed to state a Section 1983 claim for medical indifference against Dr. Bush or against any medical personnel.

### 4. Deliberate Indifference–Non-medical Personnel

The Fourth Circuit has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison doctors' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990).

### Claims against the Non-medical Personnel (Dwyer, Richardson, Brunson, and Jenkins)

With respect to the Plaintiff's claims of medical indifference against the defendants Dwyer, Richardson, Brunson, and Jenkins, it is recommended that these defendants be granted summary judgment. First, with respect to Brunson and Jenkins, the Plaintiff claims in his amended complaint that those defendants wrongfully wrote him up and moved him to disciplinary lock-up after the Plaintiff could not "stand on the red line". [37] To the extent that the Plaintiff is attempting to allege medical indifference against Brunson and Jenkins, the court finds that those allegations fail as a matter of law, and thus it is recommended that these Defendants be granted summary judgment. Next, as for Dwyer and Richardson, the Plaintiff alleges that Richardson denied him medication after the noon meal on March 1, 2007, and that Dwyer denied him medication after the noon meal on March 1, 2007. However, according to McGhaney's affidavit, "[t]he medical staff hands out all medications to inmates, and the correctional staff is not involved in that process. Medical comes to each pod three times each day to pass out medication, and they [medical] are available for inmates who may have some

other type of request."[20]  As the correctional staff is not involved in dispensing medication at the SLRDC, it follows that neither Dwyer and Richardson could have "denied" the Plaintiff his after-lunch medication.  In fact, Plaintiff's grievance form, dated February 17, 2007, sheds additional light on the Plaintiff's claim; according to the Plaintiff's grievance form, he complained to Richardson that he had waited 45 minutes before receiving his medication at lunch that day, and Richardson indicated there was nothing she could do because no nurse was available.[21]  The Plaintiff's claim that Richardson "denied" the Plaintiff his medication is without factual basis.          Moreover, on February 20, in response to the Plaintiff's February 17, grievance, the SLRDC made special arrangements for the Plaintiff to take his meals in the booking area, and then go to the nurse, in an attempt to ensure that the Plaintiff received his medication soon after his meal.[22]  Finally, with respect to the Plaintiff claim that Dwyer denied him medication on March 1, 2007, the court has reviewed the grievances filed by the Plaintiff and does not find one regarding this issue.  Therefore, this issue has not been exhausted. Notwithstanding that threshold issue, the court notes that Dwyer was not a member of medical and therefore could not provide him with medication (or deny him medication).  Therefore, the claims against Dwyer should be dismissed as wholly without merit.

Finally, to the extent that the Plaintiff claims that the Defendants' failure to provide him with snacks at appropriate times constitutes cruel and unusual punishment, this claim must fail. The medical records reflect that special snacks were ordered for the Plaintiff, to be served to him

---

[20]     McGhaney Affidavit [78] at ¶¶ 9-10.

[21]     *See* Grievance dated February 17, 2007, attached at [73-4] at p. 6.

[22]     *Id.*  In response to this accommodation, the Plaintiff filed a grievance on February 20 complaining that he was being discriminated against because he was not receiving his meal at the same time as other detainees.  The Plaintiff again was told that he would eat in the booking area and then go to medical.  *See* Grievance dated February 20, 2007 attached at 73-4 at p. 7.

after lunch and at bedtime.  Plaintiff contends that he did not receive snacks on December 15 and

16, 2006; did not receive lunch on January 31, and did not receive breakfast on February 1.  To

the extent that Plaintiff suffered any injury at all due to missing four meals over a seven (7) week

time period, the Plaintiff has not alleged that he was harmed, and indeed, there is no evidence of

harm.  Next, although Plaintiff complains that he was served food "that doesn't collaborate with

a renal diet," the Plaintiff has not alleged any specific injury, and the court's review of the file

indicates that the only support for Plaintiff's claim of serious injury as a result of not receive a

special meal on a few occasions is contained in his own affidavits and pleadings.  It is well

established that a court does not abuse its discretion by striking portions of a party's affidavit

consisting of conclusory statements or self-serving opinions without objective corroboration.

*See Evans v. Technologies Application & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Fuller v.*

*County of Charleston*, 2006 WL 533381 (D.S.C. March 3, 2006) (Duffy, J.), *citing Larken v.*

*Perkins*, 22 Fed. Appx. 114, *1 (4th Cir. October 29, 2001) (noting that the district court

properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and

unsubstantiated speculation" insufficient to stave off summary judgment.); *National Enterprises,*

*Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) ("Marvin J. Barnes' self-serving affidavit

describing the content of the repurchase agreements is not enough to defeat National's motion

for summary judgment."); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th

Cir.1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule

56.").

        Of course, it is a well-established principle that, after a defendant makes a motion for

summary judgment, the plaintiff bears the burden of making a showing sufficient to establish the

existence of every element essential to his case.  Thus, the Defendants are under no obligation to

present evidence disproving any elements of Plaintiff's claim.  Indeed, Plaintiff must come

forward with an affirmative showing more significant than conclusory and self-serving allegations in order to survive the Defendants' motions for summary judgment.  *Fuller*, 2006 WL at *5, *citing White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment).  As the evidence of record shows that there is no genuine issue as to any material fact, it is recommended that summary judgment be entered for the Defendants.  *See* Fed. R. Civ. P. 56(c).

### 5.  Plaintiff's Claims against Sumter County and Lee County

To the extent that the Plaintiff seeks to impose liability against Sumter County and Lee County, these claims must fail.  As a threshold matter, although the Plaintiff has named Sumter County and Lee County as defendants, he does not state any allegations specifically against either county which would suggest any grounds of liability.  Regardless of the deficiencies in the Plaintiff's complaint, however, both Sumter County and Lee County are entitled to be dismissed as Defendants because neither county is responsible for the supervision of the SLRDC.  Instead, the supervision of the SLRDC is delegated to the Sheriff of Sumter County, pursuant to S.C. Code Ann. § 24-5-10, which provides that "the Sheriff shall have custody if the jail in his county."  Furthermore, the South Carolina Supreme Court has held that county detention centers are "jails" within the meaning of S.C. Code Ann. § 24-5-10.  *See Lacasse v. Horry County*, *et al*, 2007 WL 2580027 at * 5 (Sept. 5, 2007 TLW-TER), *citing Rowton v. Sparks*, 270 S.C. 637, 639, 244 S.E.2d 214, 216 (1978).  In *Grayson v. Peed*, 195 F.3d 692, 697-98 (4th Cir. 1999), the Fourth Circuit held that a county is not subject to liability under 42 U.S.C. § 1983 where the Sheriff is charged with running the jail and the county has no control over policy within the jail.  Accordingly, no supervisory liability rests with Sumter County or Lee County, and summary judgment should be granted in favor of these Defendants.

### 6.  Plaintiff's Claims against Defendant McGhaney

Page 21 of 29

### a.  Eleventh Amendment Immunity

Defendant McGhaney is employed as the Assistant Director of the SLRDC, and is in charge of maintaining and overseeing the daily operations of the detention center.[23]  McGhaney states he is "employed by the [SLRDC]" which this court understands to mean that in fact, he is employed by the Sumter County Sheriff, who, pursuant to statute, is in charge of the detention center in Sumter County.  *See* S.C. Code Ann. § 24-5-10 ("the Sheriff shall have custody if the jail in his county.")  In South Carolina, Sheriffs are state officials and are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.  *See Wall v. Sloan*, No. 96-2461, 1998 WL 54938, *1 (4th Cir. Feb.11, 1998) (*citing Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Gulledge v. Smart*, 691 F.Supp. 947, 954 (D.S.C. 1988), aff'd, 878 F.2d 379 (4th Cir. 1989); *Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523, 524-25 (S.C. 1992)).  As Defendant McGhaney is the Assistant Director of the SLRDC, which is under the control of the Sheriff of Sumter County, he is also an arm of the state.  Therefore, in his official capacity, McGhaney is entitled to Eleventh Amendment immunity from monetary damages.  Finally, the undersigned notes that the Plaintiff has not sued McGhaney in his individual capacity, and the Plaintiff has not set forth any specific allegations in the complaint with respect to McGhaney.  Therefore, it is recommended that summary judgment be granted as to McGhaney.

### b.  Qualified Immunity

Even if Plaintiff has asserted claims against McGhaney in his individual capacity, McGhaney is entitled to qualified immunity because he has not violated any of Plaintiff's clearly established rights.  The Supreme Court, in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.  The Court in *Harlow* held that

---

[23]     McGhaney Affidavit [78] at ¶¶ 1-2.

government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal citations omitted), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1985).

In *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991), the Fourth Circuit Court of Appeals explained the rationale for *Harlow* qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Torchinsky*, 942 F.2d at 260-261.  (Citations omitted).  The *Torchinsky* court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." *Id.* at 261.  The *Torchinsky* court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. *Id.* "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." *Id.* (*citing Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)).  Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his

conduct would violate" those rights. *Id.* (*citing Collinson v. Gott*, 895 F.2d 994 (4th Cir. 1990)).

As the Fourth Circuit explained in the case of *Swanson v. Powers*, 937 F.2d 965 (4th Cir. 1991),

"[o]nly violations of those federal rights clearly recognized in existing case law will support an

award in damages under 42 U.S.C. § 1983." *Id.* at 967. Therefore, if a particular action by a

state agency is deemed unconstitutional, the defendant is entitled to qualified immunity unless

there is clearly established case law demonstrating that the alleged conduct is violative of the

Constitution.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of

Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money
> damages so long as their conduct does not violate clearly established statutory or constitutional
> rights of which a reasonable person would have known. Moreover, there are two levels at which
> the immunity shield operates. First, the particular right must be clearly established in the law.
> Second, the manner in which this right applies to the actions of the official must also be apparent.
> Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298 (citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right

clearly established in law, and (ii) the application of that right to the actions of the official must

be apparent. The Plaintiff in this case has not done so. As stated above, Plaintiff has not even

alleged that McGhaney himself violated his constitutional rights. Clearly, McGhaney has not

"transgressed bright lines." *Maciariello*, 973 F.2d at 298. Therefore, Plaintiff's claims against

McGhaney should be dismissed on the basis of qualified immunity as well.

### c.  Supervisory Liability

To the extent that Plaintiff's complaint can be construed to allege supervisory liability on

the part of McGhaney, such a claim must fail. Under the doctrine of supervisory liability, an

employer or supervisor is not liable for the acts of their employees, absent an official policy or

custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S.

658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142-43 (4th Cir.1982).  The employer or supervisor may only be held liable if the plaintiff can show that he had actual knowledge of the specific danger, but was deliberately indifferent to the plaintiff's needs despite his knowledge of this danger.  *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984). The Plaintiff has failed to meet this burden in that he has failed to show or even allege that McGhaney was responsible for a policy or custom that resulted in illegal action or that he has been deliberately indifferent to the needs of Plaintiff.  As such, any claim of supervisory liability fails as a matter of law.

### 5.  Conditions of Confinement

Finally, Plaintiff has failed to present any evidence that he suffered a serious or significant physical or emotional injury resulting from the conditions of his confinement.  As stated above, confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment.  *Bell*, 441 U.S. at 535 n. 16.  To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.  *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (*citing Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).  Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering.  *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir.) (*citing Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), *as amended*, 75 F.3d 448 (9th Cir.), *cert. denied*, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995).  The test for whether a prison official acts with deliberate indifference is a subjective one:  the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." *Hamm v. Dekalb Co.*, 774 F.2d 1567, 1573 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)). Furthermore, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. *Id.* at 1380-1381. To survive summary judgment, the plaintiff must show more than de minimis pain or injury.

With respect to Brunson and Jenkins, the Plaintiff claims in his amended complaint that those defendants wrongfully wrote him up and moved him to disciplinary lock-up after the Plaintiff could not "stand on the red line". To the extent that the Plaintiff attempts to make a claim regarding his conditions of confinement, such claim must fail.

Although an issue of fact may exist as to whether the Plaintiff actually missed snacks, meals, and medication, or was served the same food at every meal over a number of days, or has been denied adequate medical treatment, the Plaintiff has not shown any significant physical or emotional injury as a result of any violation to raise an issue of fact for trial. The Plaintiff has not alleged or provided any evidence that he has suffered any significant physical or emotional injury as a result of the actions or inactions of any of the Defendants.

### 6.  State Law Claims.

To the extent that Plaintiff's complaint can be read to assert additional claims under state law, such as negligence or medical malpractice, it is recommended that the court decline to exercise supplemental jurisdiction of those claims, as it is recommended that summary judgment be granted to all of the Defendants on the Plaintiff's federal claims as set forth above. *See* 28 U.S.C. 1367(c).

### 7.  This Action Should be Deemed a Strike.

Lastly, Section 804 of the PLRA, which amended § 1915(g), reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.28 U.S.C. § 1915(g).

The instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA.  Therefore, it is recommended that it be counted as a "strike" against the Plaintiff.  *See* 28 U.S.C. § 1915A.

### CONCLUSION

As the evidence of record shows that there is no genuine issue as to any material fact, it is recommended that summary judgment be entered for the Defendants.  *See* Fed. R. Civ. P. 56(c).

### RECOMMENDATION

This court finds that Plaintiff's Complaint fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff's Complaint likewise could be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii), and the court recommends that Plaintiff's Complaint [1] should be deemed a strike pursuant to 28 U.S.C. § 1915.  Accordingly, it is recommended that:

Plaintiff's Motion for Sanctions [46] is moot;

Plaintiff's Motion to Compel [56] is moot;

Plaintiff's Motion for Protective Order [57] is moot;

Plaintiff's (second) Motion for Sanctions [59] is moot;

Plaintiff's Motion to subpoena security-camera images [88] is moot;

Plaintiff's Motion to subpoena credentials of Sammy Rembert [89] is moot;

Plaintiff's Motion to subpoena copy of the contract [90] is moot; and

Plaintiff's (third) Motion for Sanctions [98] is moot denied.

**It is further recommended that:**

Southern Health Partners and Dr. Bush's Motion for Summary Judgment **[51] should be granted**;

Lee County's Motion for Summary Judgment **[75] should be granted;** and

Sumter County, Dwyer, Richardson, McGhaney, Brunson, and Jenkins' Motion for Summary Judgment **[76] should be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

October 1, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).